UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**NATHAN C. FLOYD,**

      **Petitioner,**

**v.**                            **Case No. 8:20-cv-1431-MSS-JSS**

**SECRETARY, DEPARTMENT
OF CORRECTIONS,**

      **Respondent.**

_____/

## O R D E R

Floyd petitions for a writ of habeas corpus under 28 U.S.C. § 2254 and challenges his state court conviction for sexual battery with a deadly weapon. After reviewing the amended petition (Doc. 30), the response (Docs. 17 and 33), the reply (Docs. 27 and 36), and the relevant state court record (Doc. 18), the Court **DENIES** the amended petition.

### PROCEDURAL HISTORY

A jury found Floyd guilty of sexual battery with a deadly weapon (Doc. 18-2 at 69, 78), and the trial court sentenced Floyd to twenty years in prison, followed by fifteen years of probation. (Doc. 18-2 at 82–83) Floyd appealed (Doc. 18-2 at 73), and the state appellate court affirmed. (Doc. 18-2 at 1326)

Floyd moved for post-conviction relief (Doc. 18-2 at 1332–79), the post-conviction court denied relief (Doc. 18-2 at 1398–1722), and the state appellate court affirmed-in-part and reversed-in-part and directed the post-conviction court to hold an evidentiary hearing on Floyd's claim based on newly discovered evidence. *Floyd v. State*, 202 So. 3d 137 (Fla. 2d DCA 2016). After an evidentiary hearing, the post-conviction court denied the newly

discovered evidence claim (Doc. 18-2 at 2509–13), Floyd appealed (Doc. 18-2 at 2586, 2590), and the state appellate court affirmed. (Doc. 18-2 at 2760) Floyd's federal petition follows.

## FACTS

Evidence at trial proved that Floyd sexually battered S.D. with a knife. Around November and December of 2011, S.D. worked as a prostitute on Nebraska Avenue in Tampa, Florida. (Doc. 18-2 at 672–73) A male, who drove a green Ford Thunderbird, asked S.D. if she needed a ride. (Doc. 18-2 at 673–74) S.D. understood that the male asked for sex, entered the car, and agreed to sex for $100.00. (Doc. 18-2 at 673–75) The male wanted to travel to Pasco County and agreed to drive S.D. back to Tampa. (Doc. 18-2 at 676) S.D. observed a cowboy hat in the backseat of the car. (Doc. 18-2 at 675)

The male drove S.D. to a trailer in Pasco County. (Doc. 18-2 at 677) S.D. asked the male to turn on the lights in the trailer, and the male responded that the lights did not work. (Doc. 18-2 at 677–78) The male brandished a knife and told S.D., "We can do this the easy way or the hard way." (Doc. 18-2 at 678–79) S.D. used the restroom and undressed, and the male engaged in vaginal intercourse with S.D. while he continued to brandish the knife. (Doc. 18-2 at 682–84) After the male ejaculated, S.D. wanted to return to Tampa and asked the male for a ride. (Doc. 18-2 at 684–86) S.D. and the male entered the Thunderbird, and the male drove for a few minutes, told S.D. to get out, and threw S.D.'s belongings and her mobile telephone out the window. (Doc. 18-2 at 687–89) S.D. walked around the corner and asked a woman, who was sitting on a porch, for help. (Doc. 18-2 at 689–90)

S.D. did not report the crime to police because she believed that police would not believe her. (Doc. 18-2 at 691–92) Later, a Hillsborough County detective interviewed S.D. about the rape. (Doc. 18-2 at 692–94) S.D. identified Floyd as the rapist in a photographic

lineup. (Doc. 18-2 at 694–96, 813–16) Also, S.D. identified the trailer where the rape occurred. (Doc. 18-2 at 696–99, 834–38)

The prosecutor introduced similar fact evidence. A.B. testified that on October 10, 2011, she worked as a prostitute on Nebraska Avenue, met a male who drove a green Ford Thunderbird, and agreed to have sex for $100.00. (Doc. 18-2 at 852–53) The male, who was wearing a cowboy hat, drove to a hay field in Pasco County next to a dirt road. (Doc. 18-2 at 854–56) A.B. exited the car to engage in sex and asked for the money, and the male brandished a knife and said, "We can do this the easy way or the hard way." (Doc. 18-2 at 857–58) A.B. performed oral sex on the male while the male held the knife to her neck, and the male engaged in vaginal sexual with A.B. (Doc. 18-2 at 859–61) After the male ejaculated, A.B. tried to enter the car to get a ride back to Tampa but the male locked the door and drove away. (Doc. 18-2 at 861–62) A.B. identified Floyd as the male who brandished the knife and raped her. (Doc. 18-2 at 862, 952–55) A.B. did not report the rape to the police because "it's just something that happens in that line of work" and because she believed that police would not investigate the crime. (Doc. 18-2 at 863–64)

B.M. testified that on September 26, 2011, she worked as a prostitute on Nebraska Avenue, met a male who drove a green Ford Thunderbird, and agreed to have sex for $100.00. (Doc. 18-2 at 881–83) The male, who was wearing a cowboy hat, drove down a road next to a cemetery in Pasco County. (Doc. 18-2 at 882–85) B.M. exited the car to engage in sex, and the male brandished a knife and said, "Well, we can do this the easy way, or we can do this the hard way." (Doc. 18-2 at 885–86) The male engaged in vaginal sex with B.M. (Doc. 18-2 at 888) After the male ejaculated, B.M., worried that the male would leave her in Pasco County, entered the car, but the male demanded that she exit the car. (Doc. 18-2 at 889–90)

B.M. grabbed the male's car keys and threw them in the grass. (Doc. 18-2 at 890) The male found the keys and drove away. (Doc. 18-2 at 890–91) B.M. ran down the street screaming for help, and a woman called the police. (Doc. 18-2 at 891–92) B.M. told the police about the rape but did not press charges. (Doc. 18-2 at 891–92) B.M. identified Floyd as the male who brandished the knife and raped her. (Doc. 18-2 at 896–97, 952–55)

A Pasco County detective arrested Floyd and found a switchblade knife in Floyd's pocket and a cowboy hat in his home. (Doc. 18-2 at 823–27) The detectives interrogated Floyd. At first, Floyd denied soliciting prostitutes in Tampa. (Doc. 18-2 at 758, 842, 995, 1000–01, 1006–08) After the detective showed Floyd pictures of S.D., B.M., and A.B., Floyd admitted that he solicited them, took them to Pasco County, engaged in sexual intercourse with them, and left them in Pasco County. (Doc. 18-2 at 758, 842–44, 1013–14, 1018–19) Floyd initially denied soliciting the women for sex because he did not want his wife to know about the women. (Doc. 18-2 at 760, 847, 1033) Floyd admitted that he kept the knife in his pocket and that he did not pay one of the women but repeatedly denied brandishing the knife and repeatedly insisted that the women consented. (Doc. 18-2 at 759, 844, 847, 971–72, 1014–18, 1026–28, 1031, 1035, 1041–42, 1050, 1056, 1060–61, 1067–68, 1070, 1075)

### STANDARDS OF REVIEW

**AEDPA**

Because Floyd filed his federal petition after the enactment of the Antiterrorism and Effective Death Penalty Act, AEDPA governs his claims. *Lindh v. Murphy*, 521 U.S. 320, 327 (1997). AEDPA amended 28 U.S.C. § 2254(d) to require:

> An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not
> be granted with respect to any claim that was adjudicated on

4

the merits in State court proceedings unless the adjudication of the claim —

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the U.S. Supreme Court] on a question of law or if the state court decides a case differently than [the U.S. Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). A decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the U.S. Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. Clearly established federal law refers to a holding of an opinion by the U.S. Supreme Court at the time of the relevant state court decision. *Williams*, 529 U.S. at 412.

"[AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). A federal petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law

beyond any possibility of fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

**Ineffective Assistance of Counsel**

Floyd asserts ineffective assistance of counsel — a difficult claim to sustain. *Strickland v. Washington*, 466 U.S. 668, 687 (1984), requires a defendant to demonstrate both deficient performance and prejudice:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

"There is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690.

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. To demonstrate prejudice, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability

is a "probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690–91. A defendant cannot meet his burden by showing that the avenue chosen by counsel was unsuccessful. *White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992).

Because the standards under *Strickland* and AEDPA are both highly deferential, "when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105. "Given the double deference due, it is a 'rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.'" *Nance v. Warden, Ga. Diag. Prison*, 922 F.3d 1298, 1303 (11th Cir. 2019) (citation omitted).

**Exhaustion and Procedural Default**

A petitioner must exhaust the remedies available in state court before a federal court can grant relief on habeas. 28 U.S.C. § 2254(b)(1)(A). The petitioner must (1) alert the state court to the federal nature of his claim and (2) give the state court one full opportunity to resolve the federal claim by invoking one complete round of the state's established appellate review process. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Picard v. Connor*, 404 U.S. 270, 278 (1971). The state court must have the first opportunity to review and correct any alleged violation of a federal right. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).

A federal court may stay — or dismiss without prejudice — a habeas case to allow a petitioner to return to state court to exhaust a claim. *Rhines v. Weber*, 544 U.S. 269 (2005); *Rose v. Lundy*, 455 U.S. 509 (1982). If the state court would deny the claim on a state

procedural ground, the federal court denies the claim as procedurally defaulted. *Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)).

Also, a petitioner's failure to comply with a state procedural rule governing the proper presentation of a claim bars review of that claim on federal habeas. *Coleman*, 501 U.S. at 729. "[A] state court's rejection of a federal constitutional claim on procedural grounds will only preclude federal review if the state procedural ruling rests upon [an] 'independent and adequate' state ground." *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001). A state court's procedural ruling rests on an independent and adequate state ground if (1) the last state court rendering a judgment in the case clearly and expressly relies on a state procedural rule to resolve the federal claim without reaching the merits of the claim, (2) the state court's decision rests solidly on state law grounds and is not intertwined with an interpretation of federal law, and (3) the state procedural rule is not applied in an "arbitrary or unprecedented fashion," or in a "manifestly unfair" manner. *Judd*, 250 F.3d at 1313 (citing *Card v. Dugger*, 911 F.2d 1494, 1516–17 (11th Cir. 1990)).

To excuse a procedural default on federal habeas, a petitioner must demonstrate either (1) cause for the default and actual prejudice from the alleged violation of federal law or (2) a miscarriage of justice. *Maples v. Thomas*, 565 U.S. 266, 280 (2012); *House v. Bell*, 547 U.S. 518, 536–37 (2006).

## ANALYSIS

### Ground One

Floyd asserts that the trial court violated his federal right to due process by admitting the similar fact evidence. (Doc. 30 at 12–15) The Respondent asserts that, because Floyd

failed to present the federal nature of the claim to the state court, the claim is procedurally defaulted. (Doc. 17 at 12–15) In his brief on direct appeal, Floyd raised the claim and cited the Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution. (Doc. 18-2 at 1271, 1275) Because Floyd alerted the state appellate court to the federal nature of his claim, the claim is exhausted. *Boerckel*, 526 U.S. at 845.

Before trial, the prosecutor notified the defense of his intent to introduce testimony by B.M. and A.B. as similar fact evidence (Doc. 18-2 at 40–41), and trial counsel moved to exclude the evidence. (Doc. 18-2 at 45–46) After hearing testimony by S.D., B.M., and A.B., and two detectives, the trial court denied the motion as follows (Doc. 18-2 at 338–41):

[Trial court:]    All right. The — this is — rarely do we see, in my opinion, so many identifiable points of similarity, so I'm just going to quickly summarize.

First of all, my ruling is going to be as follows: As to — I will allow the *Williams*[1] rule [evidence] as to each witness that testified. The only one that I did have some initial hesitation was [W.R.[2]]

But the Supreme Court has made it clear that the testimony and evidence offered does not have to be identical, simply identifiable points of similarity [ ] that have some special character that are so — that's so unusual as to point to the defendant.

And, in this case, I found, while there were some obvious differences between [W.R.'s] testimony and the others — obviously, the location where she was at, Dade City, as opposed to Hillsborough, she also indicated that she — there was a

---

[1] *Williams v. State*, 110 So. 2d 654 (Fla. 1959).
[2] W.R. did not testify at trial. (Doc. 18-2 at 914)

baseball cap, not a cowboy [hat] and the knife clearly was different. But I put that in both sides because it was a knife, yet it was a different type of knife. So, that was, kind of, a wash.

One of the — another difference was that she indicated she was cut with the knife. But that also I weighed in the fact of similarity that none of the women were significantly injured — physically injured — other than the intercourse, and there wasn't any testimony of injury during that — physical injury. And, also, [W.R.] indicated she only requested or was offered $20.00. All of the others [ ] $100.00 were — was testified to.

Other than — the similarities, though, with all four was the vehicle description. And most glaringly the — which was all four, again, [W.R.], as well — "The easy way or the hard way" verbiage.

Also, all of the witnesses testified that they were left there where they were brought. And, again, all of them were taken to a different location, not in the immediate area where they were picked up.

All of them suffered or would have suffered some loss of personal items after the perpetrator took off. All of them identified a knife. All of them indicated sex outside the vehicle. All of them were prostitutes. All of them identified the same — approximate same length of time of the sex act.

Each of them indicated that they did not collect money up front before they got into the car or, at least, waited a little while. At least two, maybe three of them, indicated that was because he was personable and they struck up a conversation and felt unthreatened by him. And then none of

them reported seeing a knife or any weapon prior — until it was actually pulled on them.

For all of those reasons, I find that these were significantly similar in order to go towards identity or, as was argued by the State, the consent issue, which is an element not connected with propensity.

As far as the prejudicial effect, basically, all evidence being used against the defendant is prejudicial. It's a matter — the test is whether it's unfairly prejudicial to the extent of being unlawful and I don't find that this rises to that extent. It is what it is, as far as the prejudicial effect.

So, I will allow the *Williams* rule testimony of each of the four witnesses and we'll go from there.

The trial court determined that the similar fact evidence was admissible under state law, and a state court's determination of state law receives deference in federal court. *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985) ("The federal courts must defer to a state court's interpretation of its own rules of evidence and procedure.").

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). "[S]tate and federal statutes and rules ordinarily govern the admissibility of evidence, and juries are assigned the task of determining the reliability of the evidence presented at trial." *Perry v. New Hampshire*, 565 U.S. 228, 237 (2012). "Only when evidence 'is so extremely unfair that its admission violates fundamental conceptions of justice,' [has] [the U.S. Supreme Court] imposed a constraint tied to the Due Process Clause." *Perry*, 565 U.S. at 237 (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)).

At the hearing on Floyd's motion to exclude the similar fact evidence, S.D., B.M., and A.B. testified that they worked as prostitutes on Nebraska Avenue (Doc. 18-2 at 134, 211–12, 241), a white male in a green Ford Thunderbird approached them (Doc. 18-2 at 135–36, 212, 241), they observed a cowboy hat in the car (Doc. 18-2 at 137–38, 214, 242), they agreed to engage in vaginal sex for one hundred dollars (Doc. 18-2 at 139–40, 213, 243–44), the white male drove to Pasco County (Doc. 18-2 at 140–41, 215, 244–45), they exited the car to engage in sex (Doc. 18-2 at 143–44, 216, 246–47), the white male pulled out a knife, threatened, "[w]e [can] do this the easy way or the hard way," and engaged in vaginal sex for a few minutes (Doc. 18-2 at 144–47, 216–20, 247–50), and the white male left without paying. (Doc. 18-2 at 149–50, 220–21, 249–52) S.D., B.M., and A.B. identified Floyd as the white male. (Doc. 18-2 at 277–78) During an interrogation, Floyd claimed that he engaged in consensual sex with S.D., B.M., and A.B. (Doc. 18-2 at 279–80, 307–08)

Because the sexual batteries of B.M. and A.B. were sufficiently similar to the sexual battery of S.D. and were relevant to rebut Floyd's defense based on consent, the trial court did not unreasonably admit the similar fact evidence at trial. § 90.404(2)(c)(1), Fla. Stat. (2012) ("In a criminal case in which the defendant is charged with a sexual offense, evidence of the defendant's commission of other crimes, wrongs, or acts involving a sexual offense is admissible and may be considered for its bearing on any matter to which it is relevant."). *Wade v. State*, 265 So. 3d 677, 680 (Fla. 1st DCA 2019) ("[I]t was certainly relevant that Wade had approached other women on a bicycle and forced sex at knifepoint — if for no other reason than to refute Wade's argument that the events leading to his charges were consensual.").

The trial judge reasonably determined that the probative value of the similar fact evidence substantially outweighed the danger of unfair prejudice. (Doc. 18-2 at 341) Before B.M. and A.B. testified at trial, the trial court read the following limiting instruction to the jury (Doc. 18-2 at 850–51):

> [Trial court:]   [T]he evidence that you are about to receive concerning evidence of other crimes, wrongs, or acts allegedly committed by the defendant will be considered by you for the limited purpose of proving motive, intent, plan, or identity on the part of the defendant, and you shall consider it only as it relates to those issues. However, the defendant is not on trial for a crime, wrong, or act that is not included in the information.
>
> Further, the evidence shall not be [ ] considered by you as evidence of bad character or propensity.

The trial court defined the word "propensity" (Doc. 18-2 at 879) after a juror asked for the definition. (Doc. 18-2 at 851) The trial court repeated the limiting instruction after B.M. and A.B. testified (Doc. 18-2 at 914–15) and after closing argument when providing the final instructions for deliberations. (Doc. 18-2 at 1199) A juror is presumed to follow a limiting instruction. *Samia v. United States*, 143 S. Ct. 2004, 2013 (2023) ("Evidence at trial is often admitted for a limited purpose, accompanied by a limiting instruction. And, our legal system presumes that jurors will 'attend closely the particular language of [such] instructions in a criminal case and strive to understand, make sense of, and follow' them.") (citation omitted).

During closing, the prosecutor argued that testimony by B.M. and A.B. was relevant to prove that Floyd planned and intended to rape S.D. with a knife. (Doc. 18-2 at 1181) The

prosecutor further argued that the testimony by B.M. and A.B. refuted Floyd's claim of consent. (Doc. 18-2 at 1177–80) The prosecutor did not argue that the sexual batteries of B.M. and A.B. proved that Floyd had the propensity to commit the crime against S.D.

Because admission of the testimony by B.M. and A.B. did not render Floyd's trial fundamentally unfair, the state court did not unreasonably deny his federal due process claim. *Thigpen v. Thigpen*, 926 F.2d 1003, 1019 (11th Cir. 1991) ("We find that the evidence of Thigpen's prior conviction was relevant and admissible to show his motive, and that its potential for undue prejudice did not substantially outweigh its probative value. As a result, the trial was not rendered fundamentally unfair.").

Ground One is **DENIED**.

## Ground Two

Floyd asserts that the trial court violated his federal right to due process and federal right to assistance of counsel by denying his motion for a continuance. (Doc. 30 at 15–18) The Respondent asserts that, because Floyd failed to alert the state appellate court to the federal nature of the claim, the claim is procedurally defaulted. (Doc. 17 at 19–21) In his brief on direct appeal, Floyd raised the claim and cited the Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution, *United States v. Cronic*, 466 U.S. 648 (1984), and *Griffin v. California*, 380 U.S. 609 (1965). (Doc. 18-2 at 1281–82) Because Floyd alerted the state appellate court to the federal nature of his claim, the claim is exhausted. *Boerckel*, 526 U.S. at 845. The trial court denied Floyd's motion for a continuance as follows (Doc. 18-2 at 120–28):

> [Trial counsel:]   And, Judge, I'll let you know that [in] that [S.D.] case, the State filed an amended information. Well, if I can start at the beginning. They filed an original

14

information. They amended that, filed an amended information. I filed a motion for a statement of particulars. They amended that and went back to the date of the original information.

So, again, the reason I filed for the statement of particulars is I'm trying to hit a moving target here. My client is charged with a sexual battery, [a] life felony, with a deadly weapon. I'm going to take her deposition. I'm going to see which date she says that this event occurred.

But, number one, I'm most likely not going to be prepared for trial, especially if she picks the date that was on the amended information — second amended information, which was the original information.

And because my client and I discussed the other date prior to trial and now we have another date that's been filed, I think it may have been yesterday.

Additionally, I was advised by the secretaries that there's some additional witnesses that were filed maybe yesterday that I just got in the box today and I haven't had a chance to look at those or talk to them, talk to my client about those. But those people may also need to be deposed prior to Wednesday since they were just added as of yesterday.

So, I'm just letting the Court know that the 934 case is problematic in that I really don't have a good feeling as to what date the State's going to be alleging this thing happened on since it has changed so much.

[Prosecutor:]          Judge, let me address that because we're making a big deal out of this. I originally filed the information with the correct date.

15

I made a mistake and changed the date in error and amended the information. I caught the error and I amended it, essentially back to what it's been since day one.

And, you know, it's my understanding that when the defense does not want to waive speedy trial or demands speedy trial, they're telling the Court that they're ready for trial. And, clearly, as he mentioned, these are very serious cases with potentially draconian consequences and sentences and he doesn't want to waive speedy trial, that's his peril. And I, I've done everything I can to be prepared. That's all I can do.

So, yeah, I've added witnesses at the last minute and I've had investigators hanging out on, you know, Nebraska Avenue in Tampa for eight hours today to find these women to suit Mr. Floyd's demand for speedy trial.

So, quite honestly, it's really not a concern of mine now that they're having to deal with these things at the last minute. These types of cases typically get prepared over the course of eighteen months. I understand that Mr. Vizcarra's hands are tied and I don't want him to think that this, in any way, is a reflection on him. He doesn't control whether or not they waive speedy trial. But he's a seasoned attorney who understands he's going to have to do a lot of peddling right now to prepare an adequate defense.

[Court:]            Yes.

[Trial counsel:]    And, Judge, I understand that. I think [the prosecutor] is getting confused with a demand for a speedy trial and when the defense says we're ready for trial within five days, as opposed to a defendant

16

saying that "I'm not willing at this time to waive speedy trial."

These witnesses — the victims — are not coming forward. They've been subpoenaed twice for — been subpoenaed for deposition. They didn't show. They're trial time comes, 9:00, they're not here. They didn't show. I'm not willing to waive speedy trial until such time as I, at least, know that these people are present.

We're here not in the morning of trial, Judge, but 2:20. And [the prosecutor], for the first time, says that he's located them. Now, I know [the prosecutor] and I know that this is not gamesmanship. I know that if he tells me he just found them, he just found them. But the — but it does — to the defendant, it's still the same in that you can't hold these witnesses out there and then just say, "Hey, you know what, we're going to let you have them, but it's only going to be with a couple of hours left."

So, I understand. I'm not saying that he did anything inappropriate; in fact, I'm saying the opposite. But what I'm saying is that the defendant was never advised that, you know, hey, we want — we demand a trial within sixty days. What he's just saying is that, "Look, until I, at the very least, have — give my attorney a chance to talk to these witnesses, I'm not willing to waive speedy trial."

So, I don't want that to be lost. I want the record to be clear on that, that I haven't — speedy trial runs September — mid-September.

[Prosecutor:]        July 27.

[Trial counsel:]     Mid-July or late July. We have been trying to get ready for trial. I am willing to do my

best to get ready for trial. But when the State does things like files [an] amended information the day before trial and doesn't produce witnesses and does amended witness lists right before trial, it's going to hamper me.

So, this is not a situation where — I don't want the appellate court to think that we're sandbagging here. I don't want them to think that, you know, we're all of a sudden filing a motion for continuance.

We've — where the witnesses who are present, I took their depositions where further investigation was made. We immediately waived speedy trial. We immediately move for a continuance. That's been our posture all along.

If I take their depositions and we are ready to go to trial, I don't want — I'm going to advise the Court that we're ready. If I take their depositions and we are not ready to go to trial, then I am going to advise the Court that we're not ready to go to trial. That's all I can do. So, —

[Court:]             All right.

[Trial counsel:]    — with that being said, Judge, that's the posture that I'm in at this late juncture.

[Court:]             Okay. And just so you know, I am very — usually very understanding and very tolerant of requests for continuance. And I routinely, even when I absolutely don't want to do it or when one side is jumping up and down, I don't. In this case, I just can't continue. There will not be a continuance. We need to go to trial.

Mr. Floyd was advised by myself on Friday that, you know, this is a gamble. And just like, you know, it is a little different that the witnesses are here now at

2:00 as opposed to 9:00. But [had they been] here at 9:00 ready to go — you know, we weren't going to start picking a jury until tomorrow morning anyway. So, we're ready for trial.

And that's what I personally told Mr. Floyd on Friday, that, you know, no waiver of speedy trial is a gamble. And in this — and speedy trial he shall have. Those were my exact words. And under the circumstances, I absolutely cannot justify continuing this trial when the — with the resources that have been expended to get us to this point and all the stars have aligned correctly, and we have everybody here, we're going to go to trial.

So, I'm going to deny any request for continuance and we're going to proceed. Defense will be allowed to depose the witnesses.

After the trial court denied the defense's motion to exclude the similar fact evidence and trial counsel deposed the witnesses, trial counsel renewed the motion for a continuance, and the trial court denied the renewed motion as follows (Doc. 18-2 at 344–50):

[Trial counsel:]   Additionally, Judge, [S.D.], I also filed a motion to continue on her. I also filed a waiver of speedy trial on her, willing to do that if you grant the motion.

She testified as to several names that she contacted and advised of the rape — alleged rape. She also said some things that impeach the testimony of [B.M.] and impeach the testimony of [A.B.]

She said they all talked on the street prior to law enforcement getting involved and they all exchanged information about this rape and what happened to her and what happened to the other people. It wasn't a long, drawn out thing, but she did advise

that they discussed it and they had contact with each other.

She didn't say whether she knew [W.R.], but I didn't get a chance to ask her about this other person by the name of [A.R.], whether she knew her or not. If she does say that she did, then, of course, that's going to be some more evidence.

Additionally, there's supposedly another individual that was mentioned in the taped statements from Hillsborough County, that the detective had mentioned that he, as a point of strategy — not because they really believed she was not credible — had mentioned trying to get Nathan Floyd to testify more, but just the fact that the State didn't proceed on that charge — and looks like nothing's been done in Hillsborough County — leads me to think that that might be exculpatory, might have evidence that we need to get in this particular case.

I did advise my client that if these witnesses showed up, if the State was — had them ready, that I would be asking for a continuance and I would be waiving speedy trial because I felt that we needed time to prepare and to get ready.

I have — hadn't had a chance to go over all of this with him, as you can quite imagine, and go over his testimony. There's a taped statement there that needs redaction. I've asked the Court to consider that prior to your ruling on the *Williams* rule. I guess, from what you've heard, that's not going to sway you one way or the other what you hear from that. But that's going to be — there's a lot of editorializing in there and a lot of things that are brought up that probably shouldn't be; allegations and felonies on his behalf, other charges that he has, felon

in possession of a firearm, things like that, that are prejudicial. And I haven't had a chance to go over that with [the prosecutor].

My suggestion on that would be get a court reporter to transcribe it, one that we both can agree upon, and that's going to make the redaction much easier for us. Or, you know, if we don't agree on something, we can bring it up to the Court and say, "Hey, Your Honor. We — I think this should come out and [the prosecutor] thinks this should stay in." And we can have that transcript filed for appellate purposes, if that's necessary.

[Court:]          State?

[Prosecutor:]     Well, I'm going to object. Again, we've had this conversation now for the third time.

I want to address the argument that they now have been given information and names of people that they need to look into. And I'll point [trial counsel] to page six of eight of Detective Arey's report that was discovered to him and the name [A.R.] appears there. That was never followed up or investigated in the last four months that this case has been pending.

Hillsborough County Sheriff's Office report: [C.H.], [D.H.]. Those are the names of the people that were testified about today. Again, that was not pursued between February and today.

I'm just going to renew my objection based on what I argued earlier today and ask that you can accept his waiver of speedy trial but deny his motion to continue and proceed with trial tomorrow.

[Trial counsel:]        And, Judge, I know [the prosecutor] said February, but I didn't get discovery until April the 12th. And it's clock stamped on all the files April 12th of 2012. So, I could [not] have anticipated it. I'm not a mind reader. But if I was, definitely, I would have been investigating this prior to my receiving the discovery.

[Court:]        All right. Once again, the gang's all here. We're ready to go. Mr. Floyd indicated he was ready to go on Friday. Got jurors ready, sixty of them, taking time out of their busy schedules to be here tomorrow and probably, you know, the rest of the week. We've got witnesses.

And, of course, Mr. Floyd's rights are paramount, he is the one facing incarceration, but I can't just dismiss everybody else. And it appears to me that, you know, this is all stuff that could have been explored and, or — well, quite frankly, it's clear to this Court that — and I'm not criticizing at all, so, please, don't think that's what I'm doing — but it is clear to this Court that this was a strategy utilized, basically, to force the State's hand in a belief that these witnesses were not going to be able to be produced. And that strategy does come with the gamble and peril that you get what you ask for.

Mr. Floyd indicated he was ready for trial on Friday. And I indicated, "You want your trial, you're going to get it." And that's where we're at. And, you know, I don't see any extreme change of circumstances, at all, from where we were at on Friday, other than the fact that, now the State has produced the witnesses.

So, you know, I cannot, as a general practice and general rule, just allow, suddenly, "Now we changed our minds. You know, the State called our bluff, so

we're not ready for trial." That just isn't the way it works. And I'm not going to — from my standpoint — even with that understanding, if I saw something huge that jumped out at me as [a] change of circumstances that really shocked — was shocking or new, I still might consider granting a continuance. But having heard the testimony of the four witnesses and reviewing the four files, I didn't hear anything from them that I didn't see already in these files.

So, I'm going to deny the motion for a continuance.

Floyd fails to cite an opinion by the U.S. Supreme Court that holds that the denial of a continuance that prevents a defendant from further investigating his case violates federal due process. *See Himes v. Sec'y, Fla. Dep't Corrs.*, 690 F. App'x 640, 645–46 (11th Cir. 2017)[3] ("The Supreme Court has never held that the denial of a motion for continuance to secure an alibi witness amounts to a due process violation. As a result, the Florida appellate court's summary affirmance of the trial court's denial of Petitioner's motion for continuance cannot be contrary to clearly established Supreme Court precedent.").

*Ungar v. Sarafite*, 376 U.S. 575, 590 (1964), held that the denial of a one-week continuance for new counsel to become familiar with the facts related to contempt proceedings and for the contemner to obtain additional exculpatory evidence did not violate due process. *Ungar*, 376 U.S. at 589–90, established a broad rule governing the right to a continuance:

The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer

---

[3] 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

evidence or is compelled to defend without counsel. *Avery v. Alabama*, 308 U.S. 444. Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. *Chandler v. Fretag*, 348 U.S. 3. There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied. *Nilva v. United States*, 352 U.S. 385; *Torres v. United States*, 270 F.2d 252 (9th Cir.); *cf. United States v. Arlen*, 252 F.2d 491 (2d Cir.).

*Morris v. Slappy*, 461 U.S. 1, 12–13 (1983), held that substitution of new counsel for former counsel, who could not attend trial on rape, robbery, and burglary charges because of an emergency surgery six days before trial, did not violate the defendant's federal right to effective assistance of counsel. *Morris*, 461 U.S. at 11–12, also established a broad rule governing the right to assistance of counsel:

Not every restriction on counsel's time or opportunity to investigate or to consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel. *See Chambers v. Maroney*, 399 U.S. 42, 53–54 (1970). Trial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons. Consequently, broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel. *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964).

Even if *Ungar* and *Morris* constitute clearly established law under Section 2254(d), the trial court did not unreasonably apply *Unger* and *Morris*. Both opinions establish a broad rule that a trial court may apply with discretion, depending on the specific facts of a case. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("Applying a general standard to a specific

case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable [under § 2254(d)] requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.").

On June 1, 2012, four days before trial, Floyd refused to waive his right to a speedy trial and announced that he was prepared for trial. (Doc. 18-2 at 126–27) On June 4, 2012, the day before trial, trial counsel filed a motion for a continuance and waived speedy trial. (Doc. 18-2 at 53–54) In the motion, trial counsel stated that he subpoenaed S.D. to testify at a deposition on May 23, 2012 at 2:00 P.M., and S.D. failed to appear. (Doc. 18-2 at 53) Trial counsel left to depose other witnesses at the jail and learned that S.D. arrived for the deposition at 3:40 P.M. (Doc. 18-2 at 53) Because trial counsel did not leave the jail until 4:30 P.M., trial counsel agreed with the prosecutor to depose S.D. on the morning of June 4, 2012, just before trial. (Doc. 18-2 at 53)

On June 4, 2012, S.D. did not arrive at the courthouse in the morning, and Floyd moved to dismiss the case for lack of prosecution. (Doc. 18-2 at 56–57) S.D. arrived at the courthouse at 2:20 P.M., and the trial court denied the motion to dismiss. (Doc. 18-2 at 117, 124) That afternoon, the trial court held a hearing on Floyd's motion to exclude the similar fact evidence and allowed trial counsel to examine S.D. and the two similar fact witnesses at the hearing. (Doc. 18-2 at 153–75, 227–38, 260–70) After the hearing, the trial court allowed trial counsel to further examine S.D. at a deposition. (Doc. 18-2 at 54, 127) The parties picked a jury on June 5, 2012 (Doc. 18-2 at 373–644), and the trial began on June 6, 2012. (Doc. 18-2 at 646)

Because Floyd announced that he was prepared for trial on June 1, 2012, refused to waive his right to a speedy trial, moved to dismiss the case for lack of prosecution when S.D. did not appear for trial, and moved for a continuance and waived his right to a speedy trial only after the trial court denied the motion, the trial court did not unreasonably deny Floyd's request for a continuance. Trial counsel planned to depose S.D. just before trial, when he announced that the defense was prepared for trial. Trial counsel strategically refused to waive Floyd's right to a speedy trial, wagering that the trial court would dismiss the charge because S.D. would not appear at trial. When S.D. appeared for trial, the trial court permitted trial counsel to depose S.D. Because trial counsel failed to identify "compelling reasons" to justify a continuance the day before trial, the trial court did not unreasonably apply *Unger* and *Morris*. *Morris*, 461 U.S. at 11.

The trial court determined that trial counsel did not discover any new or different evidence that would justify a continuance (Doc. 18-2 at 349–50), and Floyd fails to rebut the state court's determination. 28 U.S.C. § 2254(e)(1).

Trial counsel requested a continuance because, just before trial, the prosecutor amended the information. The initial information charged Floyd with committing the crime "on or about the first day of November, . . . 2011." (Doc. 18-2 at 23) The arrest affidavit stated that S.D. told a detective that the crime occurred "[o]n or about the first of November, 2011." (Doc. 18-2 at 11) The prosecutor amended the information just before trial and charged Floyd with committing the crime "on or between the first day of November and the thirty-first day of December, . . . 2011." (Doc. 18-2 at 49) An affidavit supporting a search warrant stated that S.D. told the detective in an interview that the crime occurred "in late

November or early December of 2011." (Doc. 18-2 at 15) At trial, S.D. testified that the crime occurred "sometime between Thanksgiving and Christmas." (Doc. 18-2 at 672–73)

Because trial counsel could have reasonably discovered before trial the affidavit in support of the search warrant, and the affidavit stated that S.D. told the detective that the crime occurred in November or December of 2011, the trial court did not unreasonably deny the continuance. *See Tingley v. State*, 549 So. 2d 649, 651 (Fla. 1989) ("[T]ime is not ordinarily a substantive part of an indictment or information and there may be a variance between the dates proved at trial and those alleged in the indictment or information as long as: (1) the crime was committed before the return date of the indictment; (2) the crime was committed within the applicable statute of limitations; and (3) the defendant has been neither surprised nor hampered in preparing his defense.").

Also, trial counsel requested a continuance to investigate A.R. and other witnesses whom S.D. identified during the deposition. (Doc. 18-2 at 345–46) The names of those witnesses appeared in police reports that the prosecutor disclosed in discovery. (Doc. 18-2 at 347–48) Because trial counsel could have investigated those witnesses before trial, the trial court did not unreasonably deny the continuance.

Ground Two is **DENIED**.

**Ground Three**

Floyd asserts that the post-conviction court violated his federal right to due process by denying his claim that new evidence demonstrated that the prosecutor obtained his conviction with fraudulent testimony. (Doc. 1 at 13–18) Floyd recites the standard for a newly discovered evidence claim under *Jones v. State*, 591 So. 2d 911 (Fla. 1991) and

contends that the post-conviction court unreasonably determined facts when denying the claim. (Doc. 1 at 13–14)

A federal court can grant relief only for a violation of federal law. 28 U.S.C. § 2254(a) (authorizing relief "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States"). In his federal petition, Floyd asserts that the post-conviction court erroneously applied *Jones*, a state court opinion establishing a standard under state law for a newly discovered evidence claim. (Doc. 1 at 13–18) Because "it is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts," the claim based on state law is not cognizable on federal habeas. *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (italics in original).

Under state law, a newly discovered evidence claim is cognizable on post-conviction. *Jones*, 591 So. 2d at 915 ("Thus, we hold that henceforth, in order to provide relief [for a newly discovered evidence claim on post-conviction], the newly discovered evidence must be of such nature that it would *probably* produce an acquittal on retrial.") (italics in original). In contrast, under federal law, "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). *See Swindle v. Davis*, 846 F.2d 706, 707 (11th Cir. 1988) ("Newly discovered evidence which goes only to the guilt or innocence of the petitioner is not sufficient to require habeas relief.").

A miscarriage of justice based on actual innocence establishes "a gateway through which a habeas petitioner must pass to have his otherwise [procedurally] barred constitutional claim considered on the merits." *Herrera*, 506 U.S. at 404. *Mize v. Hall*, 532

28

F.3d 1184, 1195 (11th Cir. 2008) ("A claim of actual innocence is normally used not as a freestanding basis for habeas relief, but rather as a reason to excuse the procedural default of an independent constitutional claim."). Floyd does not assert a miscarriage of justice based on actual innocence to excuse a procedural bar. Consequently, the state law claim, couched in a violation of federal rights, is not cognizable on federal habeas. *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) ("This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is 'couched in terms of equal protection and due process.'") (citation omitted).

Even if the Court construes the claim based on new evidence as a federal due process claim under *Giglio v. United States*, 405 U.S. 150 (1972), the claim is meritless. The post-conviction court denied the claim as follows (Doc. 18-2 at 2510–13) (state court record citations omitted):

> In his motion, the Defendant alleges that he has newly discovered evidence supporting his innocence. The Court must determine whether the newly discovered evidence is of such a nature that it would probably produce an acquittal on retrial. *Jones v. State*, 709 So. 2d 512, 521 (Fla. 1998). When alleging a claim of newly discovered evidence, the evidence "must have been unknown by the trial court, by the party, or by counsel at the time of trial, and it must appear that defendant or his counsel could not have known [of it] by the use of diligence . . . and the newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial." *Jones v. State*, 709 So. 2d [at] 521. "In applying this two-prong test, the post-conviction trial court must 'consider all newly discovered evidence which would be admissible,' and must 'evaluate the weight of both the newly discovered evidence which would be admissible,' and must 'evaluate the weight of both the newly discovered evidence and the evidence which was introduced at the trial.'" *Davis v. State*, 26 So. 3d 519, 526 (Fla. 2009) (quoting *Jones v. State*, 591 So. 2d 911, 916 (Fla. 1991)).
>
> The Defendant claimed that he had newly discovered evidence showing that two witnesses perjured themselves at trial.

Defendant alleged that cellmates of the State witnesses contacted the public defender's office after trial with new information that [B.M.] and [A.B.] confessed that they made up their testimony against Defendant that he had raped them, in an effort to bolster the victim's claim of a similar rape. Defendant contended that he probably would have been acquitted if the witnesses had testified.

An affidavit from Defendant identified only [B.M.] [B.M.] was a *Williams* Rule witness who testified about her rape at knifepoint by the Defendant. In the exhibit attached to the affidavit, affiant Rachel Troupe (now Rachel Leon) states that she heard [B.M.] say that she and some friends were lying about the rape by Defendant.

In its response, the State argues that this claim is untimely. The State also contends that even if Defendant's claim based on newly discovered evidence was timely, it is cumulative and would not probably result in an acquittal on retrial. Specifically, the State argues that the new evidence is simply another means to try and convince a jury that Defendant did not rape the victim at knifepoint. This Court determined that the Defendant's claim was timely filed and best resolved following an evidentiary hearing.

At the evidentiary hearing, the Defendant's trial counsel, Dillon Vizcarra, testified. Witnesses Rebecca Pacino and Rachel Troupe also testified. Rebecca Pacino testified that she vaguely remembered the incident that brought her to testify. She stated that she thinks she was a cellmate of [B.M.] and another inmate in the Pasco County jail on June 6, 2003. She further testified that she believed the other inmate with [B.M.] was also a witness in Defendant's case but did not recall her name. Ms. Pacino testified that she heard [B.M.] confess that she made up the rape allegation because she got mad when Defendant did not pay her for sexual services and then left her on the side of the road. She also heard [B.M.] say that Defendant did not have a knife. Ms. Pacino recalled that [B.M.] and the other inmate were laughing and that the other inmate also said that she made up the rape allegation because Defendant did not pay for sexual services and dropped her off on the side of the road. Ms. Pacino recalled that she and Rachel Troupe notified the public defender's office about the conversation. On cross-examination, Ms. Pacino admitted that she was not present during any of crimes charged and does not know what actually

30

happened to the victim. Ms. Pacino also admitted that she is a convicted felon with ten prior felony convictions.

Rachel Troupe testified that she first heard [B.M.] in the jail talking to another inmate about Defendant's case. Ms. Troupe recalled that [B.M.] confessed that when Defendant did not pay her for sexual services she got mad and claimed that he raped her. She testified that [B.M.] was laughing and said that she got some of her friends to "go along with it" and lie about Defendant raping them. Ms. Troupe did not remember if [B.M.] alleged that Defendant had a knife. Ms. Troupe also testified that she and Ms. Pacino notified the public defender's office about the conversation. Ms. Troupe admitted that she was not present during any of the Defendant's crimes. Ms. Troupe testified that she has been convicted of seven felonies, including one for a crime of dishonesty.

Attorney Dillon Vizcarra testified that the defense's theory was that the victim and the *Williams* Rule witnesses were mad at Defendant and conspired to make up the rape allegations in retaliation for Defendant's failure to pay them for sexual services and for leaving them on the road without transportation. Defense counsel testified that he presented this defense in opening statements and on cross examination of the victim, [S.D.] Mr. Vizcarra further [ ] recalled that he also cross-examined *Williams* rule witness [A.B.] on the defense's theory. Mr. Vizcarra recalled that he cross-examined *Williams* rule witness [B.M.] on this same defense, specifically that she was angry and conspired with other prostitutes to make up the rape allegation so Defendant would not get away with "ripping them off." Mr. Vizcarra testified that in closing arguments he focused again on the defense that the three prostitutes made false allegations against the Defendant for failing to pay for their services but that he did not rape the victims. He testified that his closing arguments focused on the witnesses' colluding to make up false charges. The Defendant did not testify at the evidentiary hearing.

The Court carefully observed the demeanor of the witnesses at the evidentiary hearing. In judging the credibility of Ms. Pacino and Ms. Troupe, the Court took into consideration that these witnesses are currently in custody and had been convicted of multiple felonies. Ms. Troupe has previously been convicted of a crime of dishonesty. The evidentiary hearing testimony revealed that although Ms. Pacino and Ms. Troupe were firm about their testimony, they did not provide many details about

the overheard jail conversations. The Court notes that the conversations took place over six years ago. Significantly, there was no testimony or evidence presented at the hearing to suggest that the victim was involved in the jail conversations.

The Court gives little weight to the testimony of Ms. Pacino and Ms. Troupe as to statements made by witness [A.B.], as neither witness could identify [A.B.] as participating in the conversations.

The Court also gives little weight to the testimony of Ms. Troupe and Ms. Pacino as to [B.M.'s] statements. The Court finds that their testimony, if available, would have been strictly for impeachment of [B.M.] and [A.B.] Defense counsel thoroughly cross-examined the victim and the trial witnesses regarding their biases and the motives for their testimony. Specifically, defense counsel extensively cross-examined the victim and the witnesses on the theory of defense, that the victim fabricated the allegations and colluded with other prostitutes to punish Defendant for failing to pay for sexual services and leaving her stranded on the road.

Finally, the Court conducted Defendant's trial and vividly recalls that the victim's testimony [that] Defendant raped her at knifepoint was very compelling and believable. Therefore, the Court finds that the testimony of Ms. Pacino and Ms. Troupe was not of such a nature that it would probably produce an acquittal on retrial. Even if they were available and willing to testify at Defendant's trial, their testimony also would have been for impeachment only of [B.M.] and [A.B.] Based on the testimony presented at the evidentiary hearing, the Court finds that the Defendant has failed to prove that the newly discovered evidence would produce an acquittal on retrial. Therefore, the motion for post-conviction relief as to newly discovered evidence is denied.

"[I]n order to prevail on a *Giglio* claim, a petitioner must establish [1] that the prosecutor knowingly used perjured testimony, or failed to correct what he subsequently learned was false testimony, and [2] that the falsehood was material." *Raleigh v. Sec'y, Fla. Dep't Corrs.*, 827 F.3d 938, 949 (11th Cir. 2016) (citation and internal quotations omitted).

"A falsehood is material if there is 'any reasonable likelihood' that it could have affected the result." *Raleigh*, 827 F.3d at 949.

The post-conviction court determined that Pacino and Troupe did not credibly testify at the evidentiary hearing, and a state court's determination of credibility receives deference in federal court. *Nejad v. Att'y Gen., State of Ga.*, 830 F.3d 1280, 1292 (11th Cir. 2016) ("'Federal habeas courts have no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.'") (quoting *Consalvo v. Sec'y, Dep't Corrs.*, 664 F.3d 842, 845 (11th Cir. 2011)). Floyd failed to present competent evidence that proved that B.M. and A.B. falsely testified at trial. *Maharaj v. Sec'y, Dep't Corrs.*, 432 F.3d 1292, 1313 (11th Cir. 2005) ("In the *Giglio* context, the suggestion that a statement may have been false is simply insufficient; the defendant must conclusively show that the statement was actually false.").

Also, Pacino and Troupe testified that, on June 5, 2012 or June 6, 2012, they overheard B.M. and A.B. state that they fabricated their allegations of rape because Floyd had failed to pay them for sex. (Doc. 18-2 at 2525–27, 2535–39) On June 6, 2012, B.M. and A.B. testified at trial (Doc. 18-2 at 779–80), on June 7, 2012, the jury found Floyd guilty (Doc. 18-2 at 69), and on June 14, 2012, Pacino and Troupe mailed to the public defender's office a letter summarizing B.M.'s and A.B.'s statements. (Doc. 18-2 at 1360) Trial counsel testified that he received the letter two weeks after the jury's verdict. (Doc. 18-2 at 2551) Because Floyd failed to prove that the prosecutor knew that B.M. and A.B. fabricated their testimony at trial, Floyd's construed *Giglio* fails. *Brown v. Head*, 272 F.3d 1308, 1318 (11th Cir. 2001) (holding that speculation does not demonstrate that the prosecutor knew that a witness testified falsely during trial).

Ground Three is **DENIED**.

**Ground Four**

Floyd asserts that trial counsel deficiently performed by failing to object to accusatory statements by a detective during an interrogation admitted at trial and by failing to exercise a challenge on a biased juror. (Doc. 1 at 19–25) The Respondent asserts that, because Floyd failed to adequately raise the claims in his brief on post-conviction appeal, the claims are procedurally defaulted. (Doc. 17 at 30–32)

In his brief on appeal, Floyd, through counsel, presented argument for only the newly discovered evidence claim in his post-conviction motion and summarily requested review of all remaining claims, including the ineffective assistance of counsel claims that Floyd raises in Ground Four, as follows (Doc. 18-2 at 1750–51):

> Under Fla. R. App. P. 9.141(b)(2)(C) no brief is required on an appeal from the summary denial of a Fla. R. Crim. P. 3.850 motion for post-conviction relief. Furthermore, under Fla. R. App. P. 9.141(b)(2)(D) unless the record shows conclusively that [Floyd] is entitled to no relief, the order denying relief shall be reversed and the cause remanded for an evidentiary hearing or other appropriate relief. Accordingly, although [Floyd] has briefed the denial of ground one of his motion for post-conviction relief to highlight the post-conviction court's error in denying said ground, [Floyd] does not waive this Court's review of his remaining eight claims for relief, and respectfully submits that this Court should reverse the post-conviction court's order denying relief as to each of his remaining claims, as said claims are not conclusively refuted by the record.

Floyd presented no additional argument on appeal in support of the ineffective assistance of counsel claims that he raises in Ground Four.

Under Florida law, a defendant who fails to develop an issue in the body of a brief on post-conviction appeal does not fairly present the issue to the state courts. *See Sweet v. State*, 810 So. 2d 854, 870 (Fla. 2002) (stating that "simply recit[ing] these claims from his

postconviction motion in a sentence or two, without elaboration or explanation" fails to raise an issue for appellate review) (citing *Shere v. State*, 742 So. 2d 215, 217 n.6 (Fla. 1999)); *Duest v. Dugger*, 555 So. 2d 849, 852 (Fla. 1990) ("The purpose of an appellate brief is to present arguments in support of the points on appeal. Merely making reference to arguments below without further elucidation does not suffice to preserve issues, and these claims are deemed to have been waived.").

Also, because the post-conviction court summarily denied Floyd's claims without an evidentiary hearing, Rule 9.141(b)(2)(C)(i), Florida Rules of Appellate Procedure, did not require Floyd to file a brief. However, because Floyd, through counsel, opted to file a brief, Floyd had the burden to present argument in support of the issues and demonstrate reversible error. *Doe v. Baptist Primary Care, Inc.*, 177 So. 3d 669, 673 (Fla. 1st DCA 2015) ("An appellant who presents no argument as to why a trial court's ruling is incorrect on an issue has abandoned the issue. . . . It is the duty of counsel to prepare appellate briefs so as to acquaint the Court with the material facts, the points of law involved, and the legal arguments supporting the positions of the respective parties.") (citations and internal quotations omitted).

"If a petitioner fails to 'properly' present his claim to the state court — by exhausting his claims and complying with the applicable state procedure — prior to bringing his federal habeas claim, then AEDPA typically bars [a federal court] from reviewing the claim." *Mason v. Allen*, 605 F.3d 1114, 1119 (11th Cir. 2010). "A party does not fairly present a claim if he presents the claim in state court for the first time in a procedural context in which the merits

will not ordinarily be considered." *Harris v. Sec'y, Fla. Dep't Corrs.*, 709 F. App'x 667, 668 (11th Cir. 2018)[4] (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)).

The Second District Court of Appeal affirmed without comment the post-conviction court's denial of the ineffective assistance of claims that Floyd raises in Ground Four. *Floyd*, 202 So. 3d at 138 ("Because the record does not conclusively show that Mr. Floyd is not entitled to relief, and the nature of the alleged newly discovered evidence warranted an evidentiary hearing, we reverse and remand. We affirm the denial of Mr. Floyd's other claims without further discussion.").

Between 2000 and 2010, the Second District Court of Appeal adopted a policy that required the appellate court to review every claim in a post-conviction motion summarily denied by a post-conviction court, even if the defendant opted to file a brief on appeal and failed to raise the claim. In 2010, the court of appeal abandoned that policy. *See Cunningham v. State*, 131 So. 3d 793, 794–95 (Fla. 2d DCA 2012) ("[A]s was our standard procedure from at least December 2000 to October 2010, this court independently reviewed each and every issue that had been summarily denied. . . . In September 2010, this court, by a majority vote of its active judges, decided to align its policy with those of the other Florida district courts of appeal. Thus, we no longer determine our procedure based on how a ground in a motion is resolved."). *See also Prince v. State*, 40 So. 3d 11, 13 (Fla. 4th DCA 2010) ("In appeals from the summary denial of Rule 3.850 motions, the rules do not require briefs. . . . When the *pro se* appellant opts to file a brief, we believe that, as in all appeals, the burden rests on the appellant to demonstrate reversible error. An appellant who presents no argument as to why a trial

---

[4] 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

court's ruling is incorrect on an issue has abandoned the issue — essentially conceding that denial was correct.").

On November 6, 2015, Floyd appealed the order summarily denying his post-conviction motion. (Doc. 18-2 at 1724) On May 17, 2016, post-conviction appellate counsel filed the brief summarily requesting review of the claims. (Doc. 18-2 at 1750–51) On October 14, 2016, the state appellate court affirmed without comment the denial of the claims. (Doc. 18-2 at 1758–59) Even though the state appellate court affirmed without comment, this Court cannot presume that the state appellate court ignored the procedural rule adopted in 2010 and reached the merits of the claims. Also, because Floyd failed to present argument on appeal in support of the claims, he failed to "fairly present" the claims to the state appellate court. If Floyd returned to state court to present the claims, the state court would deny the claims as procedurally defaulted. Fla. R. Crim. P. 3.850(h). Consequently, the claims are procedurally defaulted on federal habeas. *Harris*, 709 F. App'x at 668. *Tower v. Phillips*, 7 F.3d 206, 211 (11th Cir. 1993) ("[W]e may not assume that had the state court issued an opinion, it would have ignored its own procedural rules and reached the merits of this case. In fact, the most reasonable assumption is that had the state court ruled, it would have enforced the procedural bar.").

Floyd contends that he sufficiently raised the claims in his post-conviction motion and asserts that ineffective assistance of post-conviction appellate counsel serves as cause under *Martinez v. Ryan*, 566 U.S. 1 (2012), to excuse the procedural default. (Doc. 27 at 4–6, 23–25) However, *Martinez* does not apply to a claim defaulted on state post-conviction appeal. *Lambrix v. Sec'y, Fla. Dep't Corrs.*, 756 F.3d 1246, 1260 (11th Cir. 2014) ("[T]he *Martinez* rule is expressly limited to attorney errors in initial-review collateral proceedings:

'[T]he holding in [*Martinez*] does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts.'") (quoting *Martinez*, 566 U.S. at 16). Because Floyd fails to demonstrate cause and prejudice, the claims are procedurally barred from federal review. *Maples*, 565 U.S. at 280.

Ground Four is **DISMISSED** as procedurally barred.

**New Claims in Amended Petition**

Floyd raises claims in his amended petition that he did not raise in his initial petition. (Doc. 30) In Ground Five, Floyd asserts that trial counsel deficiently performed by misadvising him that the jury would learn about the nature of his prior convictions if he testified at trial. (Doc. 30 at 30–36) In Ground Six, he asserts that trial counsel deficiently performed by misadvising him not to waive his right to a speedy trial. (Doc. 30 at 37–41) In Ground Seven, he asserts that appointed post-conviction counsel deficiently performed by representing him with a conflict of interest. (Doc. 30 at 41–48)[5]

The Respondent asserts that the new claims in the amended petition are untimely. (Doc. 33 at 1–8) A one-year statute of limitation applies to a Section 2254 petition. 28 U.S.C. § 2244(d)(1). The limitation period starts when direct appeal concludes or the time to seek a direct appeal expires. 28 U.S.C. § 2244(d)(1)(A).

On April 25, 2014, the state appellate court affirmed Floyd's conviction and sentence without a written opinion. (Doc. 18-2 at 1326) The state supreme court lacked jurisdiction to review the decision without a written opinion. *Jenkins v. State*, 385 So. 2d 1356, 1359 (Fla. 1980). Floyd could have sought further review in the U.S. Supreme Court but did not seek

---

[5] Floyd mislabels these grounds as Ground Three, Ground Four, and Ground Five.

that review. *Pugh v. Smith*, 465 F.3d 1295, 1299–1300 (11th Cir. 2006). The time to seek that review expired ninety days after the state appellate court's decision — July 25, 2014. Sup. Ct. R. 13.1. Consequently, the limitation period started to run the next day. Fed. R. Civ. P. 6(a)(1)(A). *Bond v. Moore*, 309 F.3d 770, 774 (11th Cir. 2002).

"[A] properly filed application for State post-conviction or other collateral review" tolls the limitation period. 28 U.S.C. § 2244(d)(2). On April 16, 2015, Floyd placed in the hands of prison officials for mailing a motion for post-conviction relief. (Doc. 18-2 at 1332–59) When Floyd properly filed the motion, 264 days had run on the limitation period. The post-conviction court denied the motion (Doc. 18-2 at 1398–1409), Floyd appealed, and the state appellate court reversed-in-part. (Doc. 18-2 at 1758–63) After the post-conviction court held an evidentiary hearing on remand and denied relief (Doc. 18-2 at 2509–13), Floyd appealed, and the state appellate court affirmed. (Doc. 18-2 at 2760) The limitation period continued to toll until April 29, 2020, when mandate on post-conviction appeal issued. (Doc. 18-2 at 2773) *Nyland v. Moore*, 216 F.3d 1264, 1267 (11th Cir. 2000).[6]

Floyd placed in the hands of prison officials for mailing his initial Section 2254 petition on June 18, 2020. (Doc. 1 at 1) Because 313 days had run on the limitation period, Floyd timely filed his initial petition. Floyd placed in the hands of prison officials for mailing his amended petition on October 31, 2021. (Doc. 30 at 1) The initial petition did not toll the limitation period for claims not asserted in the initial petition. *Duncan v. Walker*, 533 U.S.

---

[6] Floyd petitioned for further review in the state supreme court (Doc. 18-2 at 2767), and the state supreme court dismissed the petition for lack of jurisdiction because the state appellate court issued a decision without a written opinion. (Doc. 18-2 at 2770) *Jenkins*, 385 So. 2d at 1359. Because the petition for review was not "properly filed," the petition did not toll the limitation period. 28 U.S.C. § 2244(d)(2).

167, 181–82 (2001). The limitation period continued to run fifty-two days and expired August 10, 2020. Because Floyd filed the amended petition after the limitation period expired, the claims in the amended petition asserted for the first time "are barred unless they 'relate back'" to a claim in the initial timely petition. *Davenport v. United States*, 217 F.3d 1341, 1344 (11th Cir. 2000).

A new claim relates back to an earlier claim only if both are "tied to a common core of operative facts." *Mayle v. Felix*, 545 U.S. 644, 664 (2005). "[T]he untimely claim must have more in common with the timely filed claim than the mere fact that they arose out of the same trial and sentencing proceedings." *Davenport*, 217 F.3d at 1344. "Instead, in order to relate back, the untimely claim must have arisen from the same set of facts as the timely filed claim, not from separate conduct or a separate occurrence in both time and type." *Davenport*, 217 F.3d at 1344.

In the initial petition, Floyd raised the following claims (Doc. 1 at 7–25):

(1)    The trial court violated Floyd's federal right to due process by admitting similar fact evidence at trial (Ground One);

(2)    The trial court violated Floyd's federal right to due process and federal right to assistance of counsel by denying his motion for a continuance (Ground Two);

(3)    The prosecutor violated Floyd's federal right to due process by presenting false testimony at trial, and newly discovered evidence proved Floyd's actual innocence (Ground Three);

(4)    Trial counsel deficiently performed by failing to object to comments by the detective during an interrogation admitted into evidence at trial and by failing to exercise a challenge on a biased juror (Ground Four).

In the amended petition, Floyd raises the following additional claims (Doc. 30 at 30–48):

>    (5)    Trial counsel deficiently performed by misadvising him that the jury would discover the nature of his prior convictions if he testified (Ground Five);
>
>    (6)    Trial counsel deficiently performed by misadvising him not to waive his right to a speedy trial (Ground Six);
>
>    (7)    Post-conviction counsel deficiently performed by representing Floyd with a conflict of interest (Ground Seven).

**Ground Five and Ground Seven**

Because the claims in Ground Five and Ground Seven do not arise from the same operative facts as the claims in the initial petition, Ground Five and Ground Seven are time-barred. *Davenport*, 217 F.3d at 1344.

**Equitable Tolling**

Floyd asserts that the limitation period equitably tolled for Ground Five. (Doc. 36 at 1–3) He contends that the prison where he was incarcerated denied him access to his legal papers starting in March 2020 and denied him access to the law library starting on June 18, 2020, because of COVID-19 restrictions. (Doc. 36 at 2–3) On November 10, 2020, the prison transferred Floyd to the jail in Pasco County, where jail officials also denied him access to both his legal papers and the law library. (Doc. 36 at 3) Floyd asserts that his lack of access to his legal papers and the law library prevented him from timely raising the claim in Ground Five. (Doc. 36 at 3)

"[A defendant] is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (citation omitted).

The extraordinary circumstance must be "both beyond [the defendant's] control and unavoidable even with diligence." *Johnson v. United States*, 340 F.3d 1219, 1226 (11th Cir. 2003). "Equitable tolling is an extraordinary remedy and is applied sparingly." *Outler v. United States*, 485 F.3d 1273, 1280 (11th Cir. 2007). "The burden of proving circumstances that justify the application of the equitable tolling doctrine rests squarely on the petitioner." *San Martin v. McNeil*, 633 F.3d 1257, 1268 (11th Cir. 2011).

Floyd contends that the prison denied him access to his legal papers in March 2020 and denied him access to the law library on June 18, 2020. (Doc. 36 at 2–3) The state appellate court affirmed Floyd's conviction and sentence on April 25, 2014 (Doc. 18-2 at 1326), and the limitation period started to run ninety days later — July 26, 2014. Sup. Ct. R. 13.1. Floyd fails to explain why he could not have diligently reviewed his legals papers, conducted research at the prison law library, and discovered the claim in Ground Five between 2014 and 2020, before the prison implemented the COVID-19 restrictions. Also, despite the COVID restrictions starting in March 2020, Floyd was able to draft and file his twenty-six-page typed initial petition on June 18, 2020. (Doc. 1)

Consequently, the limitation period does not equitably toll. *Johnson v. United States*, No. 21-12000, 2022 WL 4483113 at *2 (11th Cir. 2022)[7] ("In addition to this Court's precedent stating that lack of access to legal materials for part of the statute of limitations does not merit equitable tolling, Johnson did not show why he did not file, and could not have filed, his § 2255 motion before the lockdowns began in February 2020, over seven months after *Davis* was issued."); *Powell v. United States*, No. 21-12432, 2022 WL 2811987 at *1 (11th

---

[7] 11th Cir. R. 36-1 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

Cir. 2022) ("Under this Court's precedents, lockdowns and similar limitations imposed because of the COVID-19 pandemic were not extraordinary circumstances which by themselves justify equitable tolling.") (citing *Dodd v. United States*, 365 F.3d 1273, 1282–83 (11th Cir. 2004)); *Donald v. Pruitt*, 853 F. App'x 230, 234 (10th Cir. 2021) ("Donald is not entitled to equitable tolling based on his allegedly limited access to the law library in the wake of COVID-19. The district court correctly concluded that Donald hasn't shown that he was pursuing his rights diligently throughout the one-year window, including before the COVID-19 restrictions went into place.").

### Delayed Discovery of Factual Basis

Floyd asserts in Ground Seven that post-conviction counsel deficiently performed by representing him with a conflict of interest. He contends that post-conviction counsel was a prosecutor, represented the State of Florida at the deposition of S.D., and cross-examined S.D. during the deposition. (Doc. 36 at 12) He contends that he did not discover these facts that support the ineffective assistance of post-conviction counsel claim until November of 2020 and asserts that he timely filed in the claim in the amended petition on October 31, 2021. (Docs. 30 at 1 and 36 at 10)

The limitation period may start "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). However, trial counsel deposed S.D. on June 4, 2012. (Doc. 18-2 at 373, 379–80) Because, with reasonable diligence, Floyd could have obtained a copy of S.D.'s deposition and discovered the conflict of interest before 2020, the limitation period did not start in November of 2020. *Cole v. Warden, Ga. State Prison*, 768 F.3d 1150, 1157 (11th Cir. 2014) ("Time begins when the prisoner knows (or through diligence could discover) the

important facts, *not when the prisoner recognizes their legal significance*.") (citation omitted and italics in original).

Even if the claim is timely, "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i). Also, the post-conviction court appointed counsel on March 27, 2017, after the state appellate court remanded the case for an evidentiary hearing on the newly discovered evidence claim. (Doc. 18-2 at 2353) At that time, the two-year time limit on a post-conviction claim had expired, and post-conviction counsel could not have raised any of the defaulted claims in Floyd's amended petition. (Doc. 18-2 at 1328) Fla. R. Crim. P. 3.850(e) ("New claims for relief contained in an amendment need not be considered by the court unless the amendment is filed within the time frame specified in subdivision (b)."). *Beaty v. State*, 701 So. 2d 856, 857 (Fla. 1997) ("[T]he two-year period for filing a motion for postconviction relief began to run upon the issuance of that court's mandate."). Because post-conviction counsel could not have raised a new claim, ineffective assistance of post-conviction counsel does not serve as cause to excuse a procedural default. *Martinez*, 566 U.S. at 13–14. Also, because Floyd fails to demonstrate that the conflict of interest adversely affected post-conviction counsel's representation, the claim is meritless. *Mickens v. Taylor*, 535 U.S. 162, 173–74 (2002).

Ground Five and Ground Seven are **DISMISSED** as time-barred.

**Ground Six**

Floyd asserts that trial counsel deficiently performed by misadvising him not to waive his right to a speedy trial. (Doc. 30 at 38–39) This claim arises from the same operative facts as the claim in Ground Two asserting that the trial court violated Floyd's federal rights

by denying his motion for a continuance. *Mayle*, 545 U.S. at 664. However, the Respondent asserts, and Floyd concedes (Doc. 30 at 37), that the claim is procedurally defaulted because Floyd did not raise the claim in his post-conviction motion. (Doc. 33 at 7–8) Floyd asserts that the absence of counsel during post-conviction proceedings serves as cause under *Martinez* to excuse the procedural default. (Docs. 30 at 37 and 36 at 16–17) Floyd must "demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Martinez*, 566 U.S. at 14.

Before trial, trial counsel informed the trial court that he strategically chose not to waive Floyd's right to a speedy trial, anticipating that S.D. would not appear for trial (Doc. 18-2 at 379–85):

> [Trial counsel:] Judge, — I'd like to renew my motions, Judge, previously made. Judge, very quickly, discovery was obtained by us April 12, less than sixty days prior to trial. It's a sexual battery case, as I've said.
>
> . . .
>
> I have not had a chance to go over the testimony of the Defendant. I have not had the chance for him to listen to the recorded statement. I haven't had the chance to prepare properly. I don't think I can be effective. I'm not ready to go forward. I will do my best, if ordered to do so.
>
> I want to put on the record, Judge, this failure to waive speedy trial. The State's witnesses did not appear for deposition; their whereabouts were unknown. If I would have waived speedy, I think it would have been ineffective or not justified as [ ] zealous representation,

where the State's witnesses are unknown. I explained this to my client; he is aware of it.

Once they got the witnesses, I was able to depose them.

Clearly, I spoke to my client; I waived speedy trial and prepared for trial at that time. Speedy trial does not run until July, so I had time to prepare.

The fact that the Court picked this June 4 date, as I've said, less than two months from the day I got discovery on April 12. The Court did that, I think, I may be wrong, but just so there would be extra time for trial. And that's not even including the recapture period. That was a choice of the Court and the State. I did not pick that date.

. . .

[Trial court:]     All right. Thank you, [trial counsel]. And I'll reiterate real quick just the part about the speedy trial. As I indicated yesterday, this Court has no — absolutely no animosity towards a defendant's exercise of speedy trial. And — and as I indicated yesterday, I certainly understand the strategy behind it. And I tend to agree, [trial counsel], you might have been remiss had you done otherwise.

It's just a — the way the system works and — and speedy trial issues are handled and the Court's calendar and the availability of witnesses.

Like — like I said, it's just — this is — this is the time when we are — I've not seen anything that hasn't been available or anything, quite frankly, that's likely to change. And if I were to grant a continuance, other than the fact that the

> likelihood of witnesses being available is
> — is clearly subject to change. So, I — I
> just can't, in good faith, grant a
> continuance. And — and all my other
> rulings, I'll stand by today and renew.
>
> . . .

As explained in Ground Four, on June 1, 2012, four days before trial, trial counsel refused to waive his right to a speedy trial and announced that the defense was prepared for trial. (Doc. 18-2 at 126–27) On June 4, 2012, the day before trial, trial counsel filed a motion for a continuance and waived speedy trial. (Doc. 18-2 at 53–54) In the motion, trial counsel stated that he subpoenaed S.D. to testify at a deposition on May 23, 2012 at 2:00 P.M., and S.D. failed to attend. (Doc. 18-2 at 53) Trial counsel agreed with the prosecutor to depose S.D. on the morning of June 4, 2012, just before trial. (Doc. 18-2 at 53) On June 4, 2012, S.D. did not arrive at the courthouse in the morning, and Floyd moved to dismiss the case for lack of prosecution (Doc. 18-2 at 56–57). S.D. arrived at the courthouse at 2:20 P.M., and the trial court denied the motion to dismiss. (Doc. 18-2 at 117, 124)

Because S.D. failed to appear for her deposition, trial counsel reasonably anticipated that she would not attend trial. Also, trial counsel reasonably and strategically moved to dismiss the case by citing *State v. White*, 792 So. 2d 606, 607 (Fla. 4th DCA 2001), which holds:

> Generally, it is inappropriate to sanction the state for failure of a witness to appear by dismissing the case when other means to secure the witness's participation, such as continuance, exist. *State v. Pope*, 675 So. 2d 165, 167 (Fla. 3d DCA 1996); *State v. Cohen*, 662 So. 2d 430 (Fla. 3d DCA 1995).
>
> > Because of the resultant immunity from future prosecution of a particular charge, dismissal is a very harsh penalty to impose upon the State and

> is reserved for those instances where no viable
> alternative exists.
>
> *State v. S.M.F.*, 546 So. 2d 20, 21 (Fla. 3d DCA 1989). Here, the
> state did not give the trial court any reasonable assurance that
> it could or would find and serve the victim, or that it would go
> forward with the case if continued. Under these circumstances,
> we hold that the trial court did not abuse its discretion when it
> denied the State's motion for continuance and dismissed the
> information. *See State v. McCarthy*, 585 So. 2d 1167 (Fla. 4th
> DCA 1991). *See also State v. Lawrence*, 560 So. 2d 400 (Fla. 4th
> DCA 1990).

Only after S.D. appeared for trial and only after the trial court denied the motion to dismiss, trial counsel waived Floyd's right to a speedy trial and moved for a continuance.

Because Floyd fails to demonstrate that no reasonable counsel would have refused to waive a right to speedy trial until S.D. appeared for trial, Floyd fails to meet *Strickland*'s performance prong. *Hannon v. Sec'y, Dep't Corrs.*, 562 F.3d 1146, 1151 (11th Cir. 2009) ("There is a strong presumption that counsel's performance is reasonable, and to rebut that strong presumption, Hannon 'must establish that no competent counsel would have taken the action that his counsel did take.'") (citation omitted).

Also, Floyd alleges that he suffered prejudice because trial counsel was not prepared to defend him at trial. (Doc. 30 at 40–41) Floyd contends that trial counsel had not investigated his case, had not prepared a defense, and was not prepared to call Floyd to testify at trial. (Doc. 30 at 40–41) However, *Strickland* requires that Floyd demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Trial counsel deposed S.D. and the other witnesses before trial (Doc. 18-2 at 379–80) and argued at trial that S.D. and the other witnesses fabricated the sexual batteries because Floyd refused to pay them for sex and abandoned them on the side of the road. (Doc. 18-2 at 1143–62) Floyd fails to

identify evidence that trial counsel would have discovered if he had further investigated the case. *Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir. 1985) ("Speculation is insufficient to carry the burden of a habeas corpus petitioner as to what evidence could have been revealed by further investigation.").

Before closing argument, the trial judge asked Floyd whether he wanted to testify, explained to Floyd that "this is the absolute one time in your trial that you have a final say," and asked whether anyone had forced, threatened, or coerced him. (Doc. 18-2 at 1094) Floyd declined to testify and repeated twice (Doc. 18-2 at 1095): "This is my decision." Because Floyd speculates that the outcome of his trial would have changed if trial counsel had waived his right to a speedy trial before S.D. appeared for trial, his claim is meritless. Because the claim lacks merit, Floyd fails to demonstrate cause and prejudice under *Martinez*, and the claim is procedurally barred from federal review.

Ground Six is **DISMISSED** as procedurally barred.

Accordingly, it is **ORDERED** that Floyd's amended petition (Doc. 30) is **DENIED**. The Clerk is **DIRECTED** to enter a judgment against Floyd and **CLOSE** this case.

## DENIAL OF CERTIFICATE OF APPEALABILITY AND LEAVE TO PROCEED *IN FORMA PAUPERIS*

Because Floyd neither makes a substantial showing of the denial of a constitutional right nor demonstrates that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues that he seeks to raise, a certificate of appealability and leave to appeal *in forma pauperis* are **DENIED**. 28 U.S.C. § 2253(c)(2). *Slack v. McDaniel*, 529 U.S. 473, 478 (2000).

**DONE AND ORDERED** in Tampa, Florida on September 22, 2023.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE